# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| DANIEL FLOYD CATES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   NO. 1:19-cv-00026 |
| | ) |
| BRANDON HARBAUGH, et al., | )   JUDGE CAMPBELL |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION

Daniel Floyd Cates, an inmate at the Whiteville Correctional Facility in Whiteville, Tennessee, filed this pro se civil rights action under 42 U.S.C. § 1983 against Brandon Harbaugh, the Davidson County Jail, and the "Metro, City of Nashville TN Corrections Officers/Jail."[1] (Doc. No. 1 at 2–3.) He also filed a motion to proceed in this Court without prepaying fees and costs (Doc. No. 2) and a motion to obtain video and audio recordings (Doc. No. 6).

## I.     Application to Proceed as a Pauper

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's in forma pauperis application that he cannot pay the full filing fee in advance, his application (Doc. No. 2) will be granted. The $350.00 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

---

[1] In the section of the complaint for information about the defendants, Plaintiff identifies the second defendant as "Davidson County TN," with the job or title of "Correction Officers/Jail." (Doc. No. 1 at 2.) Likewise, Plaintiff lists the third defendant as "Metro, City of Nashville TN," with the job or title of "Corrections Officers/Jail." (*Id.* at 3.) Thus, the Court infers that, through the second and third defendants, Plaintiff seeks to sue unnamed correctional officers at the two detention facilities where he was taken after his alleged arrest.

## II. Initial Review

Under the screening requirements of the Prison Litigation Reform Act ("PLRA"), the Court must conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The Court must also construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

### A. Factual Allegations

Plaintiff alleges that he is a pretrial detainee. (Doc. No. 1 at 4.) According to Plaintiff, on January 5, 2019, in Nashville, Tennessee, Metropolitan Nashville Police Department ("MNPD") officer Brandon Harbaugh threatened him, assaulted him, and then charged him with resisting arrest. (*Id.* at 4–5.) Specifically, Plaintiff alleges that Harbaugh grabbed his arm and "attempted to put me in handcuffs," at which point Plaintiff asked if he was under arrest. (*Id.* at 4, 12.) Harbaugh responded "no." (*Id.* at 12.) Plaintiff tried to pull away from Harbaugh, and then Harbaugh punched him in the right eye. (*Id.*) Plaintiff sustained a black eye. (*Id.*) Other officers took Plaintiff to the ground and put their knees on Plaintiff's back and neck. (*Id.*) As Harbaugh handcuffed Plaintiff and took him to the police car, he told Plaintiff to "say I was resisting detainment if asked by anyone or I would be hit again." (*Id.*) In the car, Plaintiff alleges, Harbaugh asked if Plaintiff knew why he was being arrested. (*Id.*) Because Plaintiff feared retribution, he responded as Harbaugh previously instructed. (*Id.*) None of the officers advised Plaintiff of his

*Miranda* rights during this incident. (*Id.* at 4, 12.) Plaintiff alleges that the officers were wearing body cameras, and that the patrol car was equipped with a camera. (*Id.* at 12.)

After his arrest, Plaintiff alleges that he was taken to a facility he identifies as "the Metro Jail." (Doc. No. 1 at 4.) Some hours later, Plaintiff was taken to another facility he identifies as "the County Jail." (Id. at 13.) According to Plaintiff, he does not know the "exact name and location" of these facilities, but the events giving rise to his claims occurred "at the city and county jail in Nashville, TN." (Id. at 6.) Because the Court cannot infer the proper names of these facilities based on the information provided by Plaintiff, the Court will refer to them as "the First Jail" and "the Second Jail" for the purpose of conducting an initial review.

At the First Jail, Plaintiff was booked and not allowed to make a phone call or file a grievance. (*Id.* at 4.) Plaintiff was shackled, handcuffed behind his back, and placed in a cell by himself. (*Id.*) He fell on the floor, resulting in extreme pain to his left arm. (*Id.* at 4, 13.) Plaintiff cried for hours on the floor of the cell, screamed for help, and kicked the cell door. (*Id.* at 13.) An officer kept looking in Plaintiff's cell window and laughing, telling Plaintiff to "get up." (*Id.*) Later that night, Plaintiff was dragged to a transportation van to be taken to the Second Jail. (*Id.*) Plaintiff was placed in the back of the van without a seatbelt of any kind while he was still shackled and handcuffed. (*Id.* at 13–14.)

At the Second Jail, Plaintiff's restraints were removed and he was taken to a cell without receiving medical attention. (*Id.* at 14.) He was not allowed to make a phone call or file a grievance, and he could not shower for two days. (*Id.*) Plaintiff had to put his mouth on an unsanitary sink faucet because he did not have a cup and the water came out in a trickle. (*Id.*)

At a court appearance on the morning of January 7 (*id.*) or January 8 (*id.* at 16), Plaintiff alleges that his charges were dropped, although he was not allowed to attend this hearing. (*Id.* at

3

14, 16.) Plaintiff was not released until after 7 p.m. that evening, at which point he did not receive his clothes or $300.00 that was in his possession at the time of arrest. (*Id.* at 13–14.) Plaintiff requests monetary damages as relief. (*Id.* at 5.)

### B.      Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### C.      Discussion

"To prevail on a cause of action under § 1983, a plaintiff must prove (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (internal citation and quotation marks omitted).

#### 1.      Officer Harbaugh

Plaintiff alleges that, after MNPD Officer Harbaugh grabbed his arm, tried to place him in handcuffs, and told Plaintiff that he was not under arrest, Plaintiff tried to pull away and Harbaugh

4

punched him in the right eye. Harbaugh then arrested Plaintiff and charged him with resisting arrest. Two or three days later, Plaintiff alleges, the charges were dropped.

The Fourth Amendment protects a citizen's right to be free from "law enforcement officials us[ing] excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person." *Graham v. Connor*, 490 U.S. 386, 388 (1989). To determine whether an officer used excessive force in effecting an arrest, the Court uses "an 'objective reasonableness' standard that does not include the underlying intent or motivation of the officer." *Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008) (quoting *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004)). The Court considers several "[r]elevant factors" in evaluating objective reasonableness, including: "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). "[T]he ultimate inquiry is whether the seizure was reasonable under the 'totality of the circumstances.'" *Id.* (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006)).

Plaintiff also asserts a false arrest claim against Officer Harbaugh. (Doc. No. 1 at 3.) "To state a Fourth Amendment false arrest claim, a plaintiff must 'prove that the arresting officer lacked probable cause to arrest the plaintiff.'" *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)). "A police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Bradley v. Reno*, 632 F. App'x 807, 810 (6th Cir. 2015) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). Whether probable cause exists depends on "the totality of the circumstances," and whether the arresting officer had knowledge "at the moment of arrest" that was "sufficient to lead a prudent person to believe" the arrestee "had committed an

offense." *D.D. v. Scheeler*, 645 F. App'x 418, 424 (6th Cir. 2016) (citing *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010)).

Here, the full circumstances of Plaintiff's encounter with Officer Harbaugh are unclear from the face of the complaint. Construing the complaint liberally and taking Plaintiff's allegations as true, however, the Court concludes that Plaintiff has stated Fourth Amendment claims for excessive force and false arrest against Officer Harbaugh at this juncture.

Next, Plaintiff asserts claims against Officer Harbaugh for threatening him and failing to issue him *Miranda* warnings. (Doc. No. 1 at 3.) But "[a]llegations of mere verbal abuse and harassment do not rise to the level of a constitutional violation." *Antonelli v. Walters*, No. 07-219-GFVT, 2009 WL 921103, at *24 (E.D. Ky. Mar. 31, 2009) (collecting cases). And "a mere failure to give *Miranda* warnings does not, by itself, violate a suspect's constitutional rights or even the *Miranda* rule." *United States v. Patane*, 542 U.S. 630, 641 (2004). "Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial." *Id.* Here, Plaintiff alleges that the charges stemming from Officer Harbaugh's arrest were dismissed a few days later. Thus, Harbaugh's alleged threats and failure to issue *Miranda* warnings do not state a claim for relief under Section 1983.

### 2. Allegations Regarding the First Jail

Plaintiff alleges that he was not allowed to file a grievance or make a phone call after he arrived at the First Jail. His alleged inability to file a grievance does not state a claim for relief because inmates do not have a "constitutional right to an effective prison grievance procedure." *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (citing *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)). As to the alleged restriction on his telephone access, Plaintiff does not specifically allege that he was prevented from contacting an attorney,

and he was taken to another facility later that night. "The right to make a phone call immediately upon arrest is not a recognized property right, nor is it a traditional liberty interest recognized by federal law." *Harrill v. Blount Cty., Tenn.*, 55 F.3d 1123, 1125 (6th Cir. 1995); *see also United States v. Schaefer*, 859 F. Supp. 2d 397, 408 (E.D.N.Y. 2012) (collecting cases for the proposition that "there is no absolute constitutional right to a telephone call during police questioning, even after an arrest . . . ; however, such a constitutional right can be implicated if it relates to other constitutional rights, such as the right to consult with counsel"). Thus, Plaintiff fails to state a claim under Section 1983 on this basis.

Plaintiff also alleges that, after he was booked at the First Jail, he was shackled, handcuffed behind his back, and placed in a cell by himself. He hurt his left arm when he fell on the floor of the cell and remained there for hours. An unnamed officer kept looking in Plaintiff's cell and laughing, telling him to "get up."

Because Plaintiff was a pretrial detainee at the time of these alleged events, he could not "be punished at all, much less 'maliciously and sadistically.'" *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72 n.40 (1977)). Under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee's conditions of confinement must be "rationally related to a legitimate nonpunitive governmental purpose," and the conditions cannot "appear excessive in relation to that purpose." *Id.* at 2473 (recognizing that the Supreme Court applied this standard to "a variety of prison conditions" in *Bell v. Wolfish*, 441 U.S. 520, 541–43, 561 (1979)). Construing the complaint in Plaintiff's favor, the Court concludes that he has stated a claim for unconstitutional conditions of confinement at the First Jail against the unnamed officer outside his cell. Whether his conditions were "rationally related to a legitimate nonpunitive governmental purpose" requires development beyond the complaint.

7

Plaintiff also alleges that he did not receive medical treatment for his black eye when he arrived at the First Jail, and that he screamed for help and kicked the door at his cell after he hurt his left arm. Both pretrial detainees and convicted prisoners may state a Section 1983 claim "when prison doctors or officials are deliberately indifferent to [their] serious medical needs." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). The Sixth Circuit has held that courts should analyze claims by pretrial detainees and convicted prisoners for denial of adequate medical treatment using the same Eighth Amendment "deliberate indifference" standard. *Id.* at 937–38 & n.3. The objective component of this claim "requires the plaintiff to show that the medical need at issue is 'sufficiently serious.'" *Id.* at 938 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component, by contrast, "requires a showing that [an] 'official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Id.* at 939 (quoting *Farmer*, 511 U.S. 837).

Here, the Court concludes that Plaintiff's alleged medical needs—a black eye and an injured left arm—are sufficiently serious to satisfy the objective component of this claim. Further, viewing the allegations in a light most favorable to Plaintiff, he continually requested help from the unnamed officer outside his cell, and the officer responded by laughing and telling him to "get up." If true, these allegations are sufficient to demonstrate that the officer was aware of Plaintiff's medical needs, but deliberately disregarded them. Accordingly, the Court concludes that Plaintiff has stated a claim against the unnamed officer outside his cell at the First Jail for deliberate indifference to his serious medical needs.

Finally, to the extent that Plaintiff seeks to assert a claim related to his transportation from the First Jail to the Second Jail, he fails to state a claim. Plaintiff alleges that he was placed in the back of a transportation van while shackled and handcuffed, and that he did not have a seatbelt or

8

restraint of any kind. But Plaintiff does not allege that he suffered an injury as a result of this travel, or that the driving itself was unsafe in any way. This claim is without merit. *See Groce v. Smith*, No. 3:15-cv-0823, 2015 WL 4743818, at *2 (M.D. Tenn. Aug. 10, 2015) (Trauger, J.) (collecting cases) ("[T]ransporting inmates without seatbelts alone does not amount to the deliberate indifference required to constitute cruel and unusual punishment.").

### 3. Allegations Regarding the Second Jail

Plaintiff alleges that he was not allowed to file a grievance or make a phone call at the Second Jail. For the reasons stated above regarding these same circumstances at the First Jail, however, these allegations fail to state a claim under Section 1983.

Plaintiff also alleges that he did not receive any medical treatment at the Second Jail, but he does not identify any particular individual who denied him care. The Sixth Circuit requires pretrial detainees to satisfy both an objective and subjective component to state a claim for denial of adequate medical care. *See Winkler*, 893 F.3d at 890–91. And the Sixth Circuit has emphasized that "the subjective component of a deliberate indifference claim must be addressed for each officer individually." *Id.* at 891 (quoting *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 542 (2008)). Because Plaintiff does not identify any specific individuals involved in the alleged denial of medical care at the Second Jail, these allegations fail to state a claim.

As to the conditions of confinement at the Second Jail, Plaintiff alleges that he was released from shackles and handcuffs when he was taken to his cell, but that he was not allowed to shower for two days. He also alleges that he had to put his mouth on an unsanitary sink faucet because he did not have a cup and the water only trickled out. Plaintiff's allegations do not reflect that these conditions served a punitive purpose, and the Court concludes that his relatively brief exposure to them does not rise above "a *de minimis* level of imposition with which the Constitution is not

9

concerned." *Bell*, 441 U.S. at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)); *see Malone v. City of Louisville*, No. 3:08CV-527-S, 2010 WL 1416693, at *7 (W.D. Ky. Mar. 31, 2010) (finding that a pretrial detainee's allegation that he was denied "access to fresh water to drink or wash hands or flush toilet" on one occasion did not demonstrate a cognizable conditions-of-confinement claim under the Fourteenth Amendment).

Plaintiff next alleges that his charges were dropped on the morning of January 7 or 8, but he was not released until after 7 p.m. that night. Liberally construing the complaint, the Court will assume that the charges were dropped at 9 a.m. Plaintiff does not, however, provide any information about a specific individual responsible for the alleged delay in his release. Even under a liberal construction, the Court "is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions," and a plaintiff "must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citations omitted) (affirming dismissal of a *pro se* prisoner's complaint for failure to state a claim where the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights"). Moreover, while inmates have a "constitutional right to be free from continued detention after officers know or have notice that the person in custody" is entitled to be released, *see Seales v. City of Detroit, Mich.*, 724 F. App'x 356, 363 (6th Cir. 2018) (collecting cases), Plaintiff does not allege that officials at the Second Jail were aware that his charges had been dropped or intentionally delayed his release during the day. In these circumstances, Plaintiff's alleged release from custody approximately ten hours after his charges were dropped does not state a claim for relief.

Finally, Plaintiff alleges that, when he was released, he did not receive the clothes and money that were in his possession when he was arrested. But the "unauthorized, intentional deprivation of a prisoner's property does not give rise to a due process claim if the state provides an adequate post-deprivation remedy." *Weatherspoon v. Woods*, No. 16-1277, 2017 WL 3923335, at *3 (6th Cir. Feb. 24, 2017) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) and *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)). And "the state of Tennessee does provide an adequate post-deprivation remedy for takings of property." *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985)). Thus, because Plaintiff does not allege that he attempted to engage the state's post-deprivation remedy, or that it was inadequate, he fails to state a claim.

## III. Conclusion

For these reasons, Plaintiff's excessive force and false arrest claims against Defendant Harbaugh will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order, as will Plaintiff's claims against the unnamed officer at the First Jail for unconstitutional conditions of confinement and inadequate medical care. Plaintiff's motion to obtain video and audio recordings (Doc. No. 6) will be referred to the Magistrate Judge as well.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE